RONAL J. KISKILA and DONNA E. KISKILA
39877 Milkmaid Lane
Murrieta, CA 92562
(951) 894-2525

Pro Se

FILED
08 JUN 18 AM 10:56
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: ECL DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RONAL J. KISKILA; DONNA E. KISKILA,**<br>**Plaintiffs,**<br>**v**<br>**UNITED STATES OF AMERICA, DOES 1 THROUGH 50,**<br>**Defendants.** | **Case No. 08 CV 1032 JM CAB**<br>**FIRST AMENDED COMPLAINT FOR PERSONAL INJURIES DUE TO MEDICAL MALPRACTICE, NEGLIGENCE AND LOSS OF CONSORTIUM** |

Plaintiffs, RONAL J. KISKILA and DONNA E.KISKILA and for all causes of action against Defendants allege as follows:

**FIRST CAUSE OF ACTION**
(Medical Negligence)

1. This action arises under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 U.S.C. 1346(b), 2671, et seq.

2. Pursuant to 28 U.S.C. 1391(a) venue is proper in this Judicial District where a substantial part of the events or omissions



CK

giving rise to the claim occurred. In the above-entitled action, the Plaintiffs, RONAL J. KISKILA and DONNA E. KISKILA, are bringing this suit based upon improper medical services RONAL J. KISKILA underwent at the Escondido VA Clinic, California. Therefore, venue is proper in the Southern District of California.

3. On December 12, 2006, two separate administrative tort claims for damages for personal injury were filed on behalf of RONAL J. KISKILA and DONNA E. KISKILA, pursuant to 28 United States Code Section 2401 and 28 United States Code Section 2671 through 2680. Said Tort Claims arose from acts or omissions which occurred at the Veterans Affairs Medical Clinic, Escondido, California. Attached as Exhibit "1" are copies of certified letters dated December 10, 2007 from the Department of Veterans Affairs.

4. After receiving a letter inquiring as to the lengthy delay and status of the matter from plaintiff's congressman, only then did the Department of Veterans Affairs reply, denying the claims. Plaintiffs now file the instant Complaint.

5. That at all times mentioned herein, Plaintiffs, were and are residents of Murrieta, County of Riverside, State of California.

6. That at all times herein mentioned, Defendants, and each of them, were the governmental entities, agents, physicians, employees, joint venturers, servants, assistants, consultants and the like of their co-defendants, and were, as such, acting within the course and scope of such agency; and that each and every Defendant was negligent in the selection, hiring, monitoring, and continued employment of each

and every other Defendant as an agent, physician, employee, servant, employee, assistant, and consultant.

7. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as DOES 1 through 50. Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some actionable manner for the events and happenings alleged herein thereby legally causing the injuries and damages to the Plaintiffs.

8. That Plaintiffs incorporate by reference as though fully set forth at length herein all of the general allegations previously set forth in this Complaint.

9. That on or about October 18, 2005, and prior thereto, and thereafter, Plaintiff, RONAL J. KISKILA, consulted and engaged the services of Defendants, and each of them, at or about said time, Defendants, and each of them, undertook to examine, diagnose, prescribe medicine and drugs, and handle and control the care and treatment of Plaintiff RONAL J. KISKILA's well being and perform the necessary tests, therapy and surgery for the treatment of said problem, if same were required. The Defendants, and each of them, undertook a duty to the Plaintiff RONAL J. KISKILA, to properly diagnose medical problems and provide him with proper care and treatment. Specifically, Defendants and each of them misdiagnosed his heart disease.

10. That in the aforesaid examination, diagnosis, prescription of medicines and drugs, and handling and controlling of the care and treatment of Plaintiff, RONAL J. KISKILA, Defendants, and each of them, negligently failed to possess and to exercise that degree of knowledge and skill ordinarily possessed and exercised by other physicians, surgeons, hospitals, nurses, attendants, and the like, in the same or similar locality under similar circumstances as the said Defendants, and each of them.

11. That with respect to the duties, responsibilities and liabilities of the Defendant, UNITED STATES OF AMERICA, the Defendants negligently, or in some other actionable manner referred to hereinabove, failed to comply with the applicable legal standard.

12. That in the aforesaid handling and control of the care and treatment of Plaintiff, RONAL J. KISKILA, Defendants, and each of them, negligently and tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as Defendants, and each of them, in that said Defendants, and each of them, negligently and unlawfully failed to properly and correctly diagnose, render care and treatment, to perform proper surgery on, prescribe and administer medicine and drugs for the condition of the Plaintiff, RONAL J. KISKILA. On or about October 18, 2005, Plaintiff, RONAL J. KISKILA, contacted Veterans Affairs physician Dr. Osvaldo Lopez for

treatment of well being, including possible cardiac conditioning. As a result of the failure of defendant physicians and personnel to properly diagnose and monitor Mr. Kiskila, he underwent a cardiac event and was advised he should go to the nearest hospital being Inland Valley Medical Center. He was subsequently transferred to Cedars Sinai Medical Center in Los Angeles where he underwent emergency cardiothoracic surgery, attached as Exhibit "2". Later, he underwent surgery for the implantation of a Medtronic defibrillator at the Veterans San Diego Healthcare Hospital in La Jolla, California.

13. That as a direct and legal result of the aforesaid acts or omissions of Defendants, and each of them, Plaintiff RONAL J. KISKILA, sustained serious and severe personal injuries and pain, mental and emotional anxiety, fear, and scarring, and that said injuries have caused, and will continue to cause Plaintiff to sustain pain, physical disabilities, disfigurement, mental and emotional anxiety, disruption of the nervous system and loss of consortium etc. all to his damages according to proof at the time of trial.

14. As a further direct and proximate result of the acts and omissions of the Defendants, and each of them, Plaintiffs were compelled to and did employ the services of physicians, surgeons, nurses and the like, to handle and care for Plaintiff RONAL J. KISKILA's treatment, and did incur medical, professional and other expenses and losses; that Plaintiffs are informed and believe and based upon such information and belief allege that they will necessarily and by reason of Plaintiff RONAL J. KISKILA's injuries

incur additional like expenses and losses for an indefinite period of time in the future; that Plaintiffs will ask leave of court to amend this allegation once said amounts have been ascertained.

15. That as a further direct and legal result of the aforesaid acts or omissions of Defendants, and each of them, Plaintiffs have sustained and will in the future sustain loss of earnings, and loss of earning capacity, in an amount not presently ascertainable to Plaintiffs, who will seek leave of court to amend this complaint to allege the amount of said losses when the same have been ascertained.

## SECOND CAUSE OF ACTION

(Loss of Consortium)

16. As against Defendants, and each of them, Plaintiff, DONNA E. KISKILA incorporates by reference paragraphs 1 through 15 of the First Cause of action with the same force and effect as though set forth at length herein.

17. That at all times herein mentioned, Plaintiffs, RONAL J. KISKILA and DONNA E. KISKILA, were and are husband and wife, residing together in a marital relationship.

18. That prior to his injuries, RONAL J. KISKILA was able to and did perform his duties as a husband and spouse. However, subsequent to the injuries of Plaintiff, RONAL J. KISKILA, as allege above, and as a proximate cause thereof, Plaintiff, RONAL J. KISKILA has been unable to perform such work and services. By reason thereof, Plaintiff, DONNA E. KISKILA, has been permanently injured, suffers ill health,

mental and emotional anxiety, has incurred medical and other expenses, losses and their marital harmony has been severely disrupted and Plaintiff, DONNA E. KISKILA, has been deprived of the consortium of her husband, all to her damage in the sum which will conform to proof at the time of trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant UNITED STATES OF AMERICA as follows:

1. For general and compensatory damages;
2. For medical, hospital and related expenses incurred;
3. For medical monitoring and related expenses;
4. For loss of earnings and loss of earning capacity;
5. For loss of consortium;
6. For costs of suit and reasonable attorney fees;
7. For interest at the applicable legal rate; and
8. For such other and further relief as the Court may deem just and proper.

Dated: June 18, 2008

RONAL J. KISKILA

DONNA E. KISKILA

Pro Se

**DEPARTMENT OF VETERANS AFFAIRS**
**Office of Regional Counsel**
**4150 Clement Street, Building 210**
**San Francisco, CA 94121**
**TEL (415) 750-2288**
**FAX (415) 750-2255**

December 10, 2007

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Ronal J. Kiskila
39877 Milkmaid Lane
Murrieta, CA 92562

Re: Administrative Tort Claim of Ronal J. Kiskila

Dear Mr. Kiskila:

This office has now completed its investigation of your personal injury claim received on December 12, 2006, in which you allege $6,000,000 in personal injuries as a result of negligence, omissions, errors, wrongdoings and malpractice which caused you to have a heart attack, irreparable injuries, surgeries, damages, pain, suffering and other losses. Our office has investigated the claim and determined that your claim(s) are not supported by the evidence of record. Accordingly, your claim is hereby denied.

If you are dissatisfied with this decision, you may file a request for reconsideration of your claim with the VA General Counsel by any of the following means: (1) you may mail your request to the Department of Veterans Affairs, General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) you may file your request by data facsimile (fax) to (202) 273-6385; or (3) you may e-mail your request to OGC.torts@mail.va.gov. To be timely filed, VA must <u>receive</u> this request prior to the expiration of 6 months from the date of the mailing of this final denial. Upon filing such a request for reconsideration, VA shall have 6 months from the date of that filing in which to make final disposition of the claim, and your option to file suit in an appropriate U.S. District Court under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of such request for reconsideration (28 C.F.R. Section 14.9).

In the alternative, if you are dissatisfied with the action taken on your claim, you may file suit in accordance with the Federal Tort Claims Act, sections 1346(b) and 2671-2680, title 28, United States Code, which provides that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated within 6 months after the date of the mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If you do initiate such a suit, you are further advised that the proper party defendant is the United States, not VA.

Sincerely,

Suzanne C. Will
Regional Counsel

EXHIBIT 1

Case 3:08-cv-01032-JM-CAB Document 1 Filed 06/10/2008 Page 8 of 10

**DEPARTMENT OF VETERANS AFFAIRS**
**Office of Regional Counsel**
**4150 Clement Street, Building 210**
**San Francisco, CA 94121**
**TEL (415) 750-2288**
**FAX (415) 750-2255**

December 10, 2007

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Donna E. Kiskila
39877 Milkmaid Lane
Murrieta, CA 92562

Re: Administrative Tort Claim of Donna E. Kiskila

Dear Ms. Kiskila:

This office has now completed its investigation of your personal injury claim received on December 12, 2006, in which you allege $2,000,000 in personal injuries as a result of negligence, errors, acts, and malpractice which caused your husband to suffer severe injuries, a heart attack, loss of income, future surgeries, losses, physical and emotional damages and money damages. Our office has investigated the claim and determined that your claim(s) are not supported by the evidence of record. Accordingly, your claim is hereby denied.

If you are dissatisfied with this decision, you may file a request for reconsideration of your claim with the VA General Counsel by any of the following means: (1) you may mail your request to the Department of Veterans Affairs, General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) you may file your request by data facsimile (fax) to (202) 273-6385; or (3) you may e-mail your request to OGC.torts@mail.va.gov. To be timely filed, VA must <u>receive</u> this request prior to the expiration of 6 months from the date of the mailing of this final denial. Upon filing such a request for reconsideration, VA shall have 6 months from the date of that filing in which to make final disposition of the claim, and your option to file suit in an appropriate U.S. District Court under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of such request for reconsideration (28 C.F.R. Section 14.9).

In the alternative, if you are dissatisfied with the action taken on your claim, you may file suit in accordance with the Federal Tort Claims Act, sections 1346(b) and 2671-2680, title 28, United States Code, which provides that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated within 6 months after the date of the mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If you do initiate such a suit, you are further advised that the proper party defendant is the United States, not VA.

Sincerely,

Suzanne C. Will
Regional Counsel

CEDARS-SINAI MEDICAL CENTER.

DEAPRTMENT: HEALTH INFORMATION
Address: 8700 Beverly Blvd, Suite 2901, Los Angeles CA 90048

# FAX COVER SHEET

Date: 12/19/05
Number of pages including cover sheet: 7

To: DR. LOPEZ

Phone:
Fax phone: (760) 291-0301
CC:

From: Release of Information Department
Amy

Phone: 310-423-2259
Fax phone: 310-423-0113

REMARKS: ☒ Urgent ☐ For your review ☐ Reply ASAP ☐ Please comment

KUSKIZA / RONM

Important Warning: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this information is STRICTLY PROHIBITED. If you have received this message by error, please notify us immediately at 310-423-2259 and destroy the related message. Thank you for your cooperation.

Final 1/8/03

EXHIBIT 2

PATIENT: KISKILA, RONAL

MED REC: 100091728

CEDARS-SINAI MEDICAL CENTER DICTATOR: SHARO S. RAISSI, M.D.

OPERATION REPORT - CARDIOTHORACIC SURGERY
12/09/2005

SURGEON: Sharo S. Raissi, M.D.

ASSISTANT: Robert M. Kass, M.D.

ANESTHESIOLOGIST: Maria A. De Castro, M.D.

PREOPERATIVE DIAGNOSIS: Recent large myocardial infarction four days ago with 98% left main disease with unstable angina pectoris, ischemic cardiomyopathy with ejection fraction of 25%, mild mitral regurgitation, history of hypertension and hypercholesterolemia.

POSTOPERATIVE DIAGNOSIS: Recent large myocardial infarction four days ago with 98% left main disease with unstable angina pectoris, ischemic cardiomyopathy with ejection fraction of 25%, mild mitral regurgitation, history of hypertension and hypercholesterolemia.

PROCEDURE PERFORMED: Emergency double arterial coronary bypass surgery using left internal mammary artery to LAD and radial artery to circumflex marginal, using antegrade and retrograde blood cardioplegia and total hyperthermic cardiopulmonary bypass.

INDICATIONS FOR PROCEDURE: This is a 67-year-old, Caucasian gentleman who had a large anterolateral myocardial infarction four days ago in Marietta, California and was transferred to Cedars-Sinai for definitive treatment and management under the care of Dr. Norman Lepor. He underwent coronary angiography after arrival today which showed 98% left main disease with nonobstructive, nondominant small right coronary system and ejection fraction of 25% compatible with ischemic cardiomyopathy. This patient had a history of hypercholesterolemia, hypertension, left ventricular hypertrophy and mild mitral regurgitation. He was scheduled for Monday surgery; however, he developed unstable angina pectoris and despite IV heparin and nitroglycerin he had a 4 mm ST elevation in the anteroseptal area. As a result he was taken to the operating room on an emergency basis. He was fully informed and agreed to proceed.

FINDINGS: The patient remained hemodynamically stable with the induction of anesthesia. He had a good quality sternum. Upon opening his chest a very large hypertrophied heart was noted with some recent infarct in the anterolateral portion of the heart. The patient had very dark desaturated blood on the right side of the heart compatible with low cardiac output syndrome. He had an excellent quality left internal mammary artery that was anastomosed to 1.8 mm LAD. He had a good radial artery that had one calcified plaque that was anastomosed to a 2 mm circumflex marginal without problems. The patient came off cardiopulmonary bypass on Nipride drip in normal sinus rhythm without any problems. He did not receive any blood transfusion; however, he did receive a unit of platelet pheresis at the end of the procedure. The patient's myocardial contractility did improve somewhat at the end of the operation. After chest closure he left for the cardiac surgery intensive care unit in satisfactory condition.

DESCRIPTION OF PROCEDURE: The patient was positioned supine on the operating table. After general endotracheal tube anesthesia and monitoring lines he was prepped and draped in the usual fashion. Using a two-team approach, the left internal mammary artery, as well as left radial artery were harvested at the same time. The patient was heparinized. The pericardium was opened and he was placed on routine

hyperthermic cardiopulmonary bypass through the cannulation of the ascending aorta and right atrium. After the aorta was crossclamped the patient received antegrade followed by retrograde blood cardioplegia. Two arterial bypasses were performed as mentioned before. Subsequently the crossclamp was removed. The patient was rewarmed developing spontaneous normal sinus rhythm. He was placed on a Nipride drip for control of hypertension. After the patient came off cardiopulmonary bypass protamine was administered and the patient was decannulated. Sutures were secured. Two mediastinal chest tubes were placed in. Hemostasis was assured. The sternum was closed using stainless steel wires and absorbable sutures were used for the subcutaneous tissue. Overall the patient tolerated the procedure very well and left for the cardiac surgery intensive care unit in satisfactory condition.

______________________________

SHARO S. RAISSI, M.D.

SSR/MEDQ/171792074 D: 12/09/2005 T: 12/12/2005 JOB#: 2399

cc: Norman E. Lepor, M.D.

Robert M. Kass, M.D.

---

Change History and Electronic Signatures:
Signed by RAISSI, SHARO (4445) at 12/12/2005 15:16

---



DEC. 19. 2005 3:12PM 2509 RELEASE OF INFO NO. 8050 P. 3/7

PATIENT: KISKILA, [illegible]

MED REC: 100091728

CEDARS-SINAI MEDICAL CENTER DICTATOR: SHAHO S. RAISSI, M.D.

CONSULTATION - CARDIOTHORACIC SURGERY
12/09/2005

REASON FOR CONSULTATION: This is an emergency cardiac surgery consultation requested on this 67-year-old Caucasian gentleman who had presented to Marieta Hospital with acute myocardial infarction for the first time. After initial stabilization, he was transferred to Cedars-Sinai Medical Center today, underwent coronary angiography, that essentially the patient has ischemic cardiomyopathy with a left ventricular ejection fraction of about 25% and 95% left main disease affecting a large LAD and circumflex system. This patient had a nondominant small right coronary arterial system with no significant problems. Initially he was comfortable post catheterization; however, he developed chest pain, and, after initiation of IV heparin, his chest pain diminished. However, he required IV nitroglycerin to resolve his chest pain. His EKG while on nitroglycerin and heparin showed significant ST elevation in V1, 2 and 3 precordial leads, and this is a new change despite him having left bundle branch block chronically. As a result of this, the patient was advised to undergo emergency double coronary bypass surgery ASAP, who fully accepted and agreed to proceed. His wife is present at the bedside. His son, who is a physician, also is present at the bedside, and they fully accept and agree with the risks of around 5% and also possibility of need for blood transfusion.

PAST MEDICAL HISTORY: The patient is status post tonsillectomy, positive history of hypertension, positive history of hypercholesterolemia, positive history of coronary artery disease, and negative history for diabetes, asthma, stroke. Positive history for heart attack four days ago prior to his transfer to Cedars-Sinai Medical Center.

ALLERGIES: The patient has no known drug allergies.

MEDICATIONS: The patient at the present time has received aspirin. He is on IV heparin and nitroglycerin, as well as he received very low dose beta blocker of 12.5 mg of Tenormin. He has been on statin treatment for hypercholesterolemia prior to this admission to the hospital.

SOCIAL HISTORY: The patient never smoked. He drinks only occasionally, once a week.

FAMILY HISTORY: His father died in his mid-30s during World War II. His mother died with a stroke in her early 80s.

REVIEW OF SYSTEMS:
The patient is right-handed, does not complain of any headache, dizziness, nausea, vomiting, any upper extremity problem, does not complain of shortness of breath. He had chest pain that did improve on IV heparin and nitroglycerin, does complain of occasional heartburn, does not complain of any abdominal pain, does not complain of any skin infection or lower leg edema, does complain of occasional swelling of the dorsum of the feet, and he was treated for gout at some time in the past. The patient does not complain of lower leg varicosities and wakes up a couple of times at night to use the restroom.

PHYSICAL EXAMINATION:
67-year-old Caucasian gentleman, very pleasant, very intelligent, a good historian. He has bilateral radial pulses, no carotid bruit. Has symmetrical eyes. He has a slightly dry mouth. He has a systolic arterial blood pressure about 130, normal sinus rhythm with left bundle branch block on EKG. He has a mildly obese abdomen with no

**HEMODYNAMICS:** Initial aortic opening pressure was 133/77 with a mean of 104. Aortic final is 133/77 with a mean of 97. Left ventricular pressure was 121 systolic with an end-diastolic pressure of 529.

**LEFT VENTRICULOGRAPHY:** It appeared that the patient had an ejection fraction of approximately 20-25%. There was diffuse wall motion disease with no specific wall motion abnormalities that were greater than another; rather, there appeared to be diffuse hypokinesis.

**IN CONCLUSION:** This is a 67-year-old gentleman with severe left main disease, status post probably non-ST elevation myocardial infarction with positive troponins after presenting with rapid atrial fibrillation. He is status post lytics at an outside hospital. A surgery evaluation has already been performed. Dr. Raissi is in the process of completing that surgical evaluation and we await his recommendations as far as timing of surgery. He will be started on low-dose beta blocker, low-dose ACE-inhibitor, as well as aspirin. I have spoken with Dr. Lepor, who wanted to start the patient on Lovenox rather than heparin drip. Lovenox will be discontinued on Sunday night prior to pending operation on Monday morning. He can be started on Inspra tomorrow if it turns out that his ejection fraction is truly depressed and his ACE-inhibitor can be up titrated.

FERNANDO MENDOZA, M.D.

NORMAN E. LEPOR, M.D.

FEM/MEDQ/171723917 D: 12/09/2005 T: 12/11/2005 JOB#: 889

**PRELIMINARY UNVERIFIED REPORT**

---

Change History and Electronic Signatures:
Edited and signed by MENDOZA, FERNANDO (7134) at 12/13/2005 14:35

---